IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ERIN WATT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AURELIO GALLI, VANDERBILT )<br>UNIVERSITY SCHOOL OF MEDICINE )<br>and VANDERBILT UNIVERSITY, )<br>)<br>Defendants. ) | Docket No. 3:14-cv-01441<br>JURY DEMAND |

## AMENDED COMPLAINT

Comes now the Plaintiff, ERIN WATT, by and through her undersigned counsel, and would respectfully submit this Complaint against the Defendants, AURELIO GALLI, VANDERBILT UNIVERSITY SCHOOL OF MEDICINE and VANDERBILT UNIVERSITY.

## PARTIES

1. Plaintiff, ERIN WATT (hereinafter referred to as WATT), is a resident of Davidson County, Tennessee, and a former graduate student at Vanderbilt University. Ms. Watt resides at 2950 Franklin Pike, Nashville, Tennessee 37204 and whose Telephone Number is (606) 584-9900.

2. Defendant, AURELIO GALLI (hereinafter referred to as GALLI), is an Associate Professor of Molecular Physiology and Biophysics at Vanderbilt University, Vanderbilt University Medical Center and Vanderbilt University Kennedy Center. Defendant Galli is being sued individually and in his capacity as employee of Vanderbilt University. His principal place of business is located at (LAB) 6-3890/ (Office) 6-3891, 465 21st Ave South, 7124 MRB III ,Nashville, TN 37013.

3. Defendant, Vanderbilt University School of Medicine, is a private institution of higher education whose registered agent is located at 305 Kirkland Hall, General Counsel, Nashville, TN 37240-0001 or Office of The General Counsel, 2100 West End Ave Suite 750, Nashville, TN 37203.

4. Defendant, Vanderbilt University is a private institution of higher education whose registered agent is located at 305 Kirkland Hall, General Counsel, Nashville, TN 37240-0001 or Office of The General Counsel, 2100 West End Ave Suite 750, Nashville, TN 37203-523.

## JURISDICTION

5. The subject matter of this litigation relates to sexual harassment, harassment, abuse, discrimination, intentional infliction of emotional distress, negligence, gross negligence and negligent supervision all in violation of federal and state statutes, including Titles VI, VII, and IX of the Civil Rights Act of 1964, and the Americans With Disabilities Act, which all occurred in Davidson County, Tennessee, while Plaintiff was a graduate student and employee at Vanderbilt University.

6. All parties are either a resident of, are located in , or work in Davidson County, Tennessee.

7. This court has subject matter jurisdiction over all claims.

## STATUTE FOF LIMITATIONS

8. As will be shown from the facts set forth below, this Complaint is filed on a timely basis as to the applicable statute of limitations.

9. As to the cause of action under Title VI, the applicable statute of limitations is one year. 42 U.S.C. § 2000d. Title VI claims are subject to the "Continuing Violation" Doctrine extending statute of limitation to three years.

10. As to the cause of action under Title VII, the applicable statute of limitations is one year. 42 U.S.C. §§ 2000e. Title VII claims are subject to the "Continuing Violation" Doctrine extending statute of limitations to three years.

11. As to the cause of action under Title IX, the applicable statute of limitations is one year. 20 U.S.C. § 1681(a). Title IX claims are subject to the "Continuing Violation" Doctrine extending statute of limitations to three years.

12. As to the causes of action for negligence, gross negligence, intentional infliction of emotional distress, negligent supervision, sexual harassment under the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101(a)(l), and discrimination, the applicable statute of limitations is one year.

## FACTS

13. Watt began graduate school in June of 2009, in the program of neuroscience. During this time, Watt was mostly taking classes but was also doing lab work. She maintained a 40 to 60 hour work week. For her work in the lab she was paid by the Interdisciplinary Program in Biomedical and Biological Sciences (IGP) and did not receive a W-2 for tax purposes.

14. Watt first rotated into Defendant Galli's lab in the summer of 2009, but was technically still in the IGP program and was not yet assigned to his lab.

15. Watt rotated into Defendant Galli's lab a second time in the spring of 2010. Watt was not officially a part of the lab. During this time she was primarily doing lab work, writing grants for Defendant Galli's lab and studying for her qualifying exam. Watt maintained a 40 to

60 hour work week. For her work in the lab she was paid by the Interdisciplinary Program in Biomedical and Biological Sciences (IGP) and did not receive a W-2 for tax purposes.

16. Watt officially joined Defendant Galli's lab on a training grant in the summer of 2010. During this time Watt was primarily doing lab work, writing grants for Defendant Galli's lab, working on publications and studying for her qualifying exam. During this time she maintained a 40 to 60 hour work week. After passing her qualifying exam in September 2010, Watt's main focus was on research in the lab. For her work in the lab she was paid by the Molecular Endocrinology Training Program (METP) and did not receive a W-2 for tax purposes. This continued for two years.

17. In the summer of 2012, Watt's training grant funding ran out and she was then paid directly through Defendant Galli's grants. At this time she began receiving a W-2 form for tax purposes. She continued as an employee in this capacity until she reported the abuse and discrimination to the Director of Graduate Studies on August 22, 2013.

18. While an employee, Watt was primarily doing lab work, writing grants for Defendant Galli's lab, and working on publications. She maintained a 40 to 60 hour work week. Also, during this time Watt was the teaching assistant in a class for Defendant Aurelio as a part of her Neuroscience Graduate Program requirements.

19. New funding through the Vanderbilt Brain Institute (VBI) was attained by Doug McMahon (DGS), which started on September 1, 2013. Watt received compensation for her work through the VBI grant until she took a new position outside of Vanderbilt on October 15th, 2013.

20. As a result of the constant sexual harassment, mental abuse and discrimination, Watt left the Neuroscience program in the fall of the 2013 without receiving the PhD for which

she had been working. Defendants granted her a Master's degree in the field of Neuroscience instead.

21. During the time Watt worked in Defendant Galli's lab, twice he called her "ugly", "fat" and "stupid" in front of the other graduate students. He would routinely make comments concerning her weight, her appearance and her intelligence. These types of remarks by Defendant Galli to Watt were common and witnessed on many occasions by other students.

22. During the time Watt worked in Defendant Galli's lab, he would routinely call her a "lesbian" or "bisexual" or "polysexual" due to the fact that she went to an all-female college for her undergraduate education. Defendant Galli would make said remarks in either a mocking or overtly sexual manner depending on the occasion.

23. During the time Watt worked in Defendant Galli's lab, he would routinely mock and belittle Watt concerning the fact she was in recovery for alcoholism. During the summer of 2013, Defendant Galli stated in the lunch room in front of numerous other students that he wished Watt would start drinking again because she would be more fun.

24. Defendant Galli would exclude Watt from any function where alcohol would be served notwithstanding the fact Watt had been sober for many years and the presence of alcohol was not an issue for her. Defendant Galli would make sure that all other graduate students knew that Watt was in recovery and that she was to be excluded.

25. Defendant Galli would routinely tell Watt that he would not push her as hard as he did the other students or expect as much out of her because she was more emotionally fragile than everyone else due to her being a recovering alcoholic. Defendant Galli would routinely make said comments in front of other graduate students.

26. In February, 2011, Watt was nominated as one of two students to run for the position of Middle TN Chapter Society for Neuroscience Representative. Defendant Galli actively set forth to discredit and belittle Watt to the entire department in order to keep her from being elected.

27. In April 2012, Defendant Galli intentional lied to Watt's graduate committee stating that she was never present in the lab and was not doing her research. Watt was in fact working seven days a week in the lab. Many of the committee members routinely saw her working when they would come to the lab and knew that Defendant Galli's claims against Watt were false.

28. Defendant Galli would often comment on the role of women within the scientific community. He would make comments about women who served on various committees stating that they were only on said committees because they were women and that they were not qualified to serve but were simply there to fill a quota.

29. In January 2013, Watt was nominated and elected Neuroscience Student Organization President, which was a great honor. However, Defendant Galli forced her to turn down the position and refused to speak to her for many days following the event.

30. While Watt was on vacation in Mexico, Defendant Galli would send her harassing emails making false accusations in an attempt to disrupt her vacation. Defendant Galli's actions resulted in Watt having a panic attack while out of the country.

31. Defendant Galli would prevent Watt from taking her vacation time, personal time, or sick leave. Defendant Galli would ask prying and personal question if Watt requested any time off for vacation, personal or sick time. Defendant Galli would then act in a punitive, exclusionary and/or harassing manner before and after a period of time off.

32. Defendant Galli's actions resulted in Watt feeling panicky and anxious anytime she had to take a sick day.

33. Defendant Galli would harass Watt anytime she had a doctor's appointment and would insist he be given the details of any medical condition.

34. Anytime Watt would try to stand up to Defendant Galli he would threaten her and her career. On August 21, 2013, Defendant Galli told Watt that she needed to "be careful" (referring to her future career in his hands) when she attempted to defend her taking one morning off to attend the naturalization ceremony of another graduate student who was becoming a U.S. citizen. Defendant Galli threatened Watt in front of other graduate students.

35. Defendant Galli would continuously ask Watt very personal questions concerning her dating life and sexual activity. When Watt refused to share any details, Defendant Galli accused her of being uptight and stated that she would be less stressed out if she had more sex. He would ask inappropriate questions , such as: when was the last time Watt had sex, who she last had sex with, how many sexual partners she had, did she have sex with women, did she have sex with multiple people at the same time? Additionally, Defendant Galli asked if Watt was dating and/or attracted to fellow students (males and females) regularly.

36. During a conference in New Orleans in November, 2012, Defendant Galli allowed another male professor to stay on the couch in the condo in which the female graduate students were staying and allowed said professor to make romantic and sexual advances on the students including Watt.

37. During a conference in San Diego in 2011, Defendant Galli required the female graduate students to attend a boat party where the male professors became intoxicated and were

allowed to make romantic and sexual advances on the students including Watt. Defendant Galli claimed this was for professional development.

38. Also, during the trip to San Diego, Defendant Galli become very intoxicated on the flight and insisted on driving all of the students to the hotel notwithstanding their many objections.

39. Defendant Galli would Skype with other male professors and would turn the camera on Watt so that they "could see how beautiful his female assistants were."

40. Defendant Galli would search for "embarrassing" pictures of Watt on the internet so that he could then blackmail her. Once he located a picture that he deemed embarrassing he would show it to all the other graduate students in order to harass and demean.

41. Defendant Galli would daily comment on Watt's appearance, either that she looked good or bad, often would make sexual innuendos in connection with her appearance.

42. Defendant Galli would shame and harass Watt for any activities she had outside of lab including soccer or her involvement in Alcoholics Anonymous. He asked on several occasions if Watt had hot friends in her "double A" meetings (he refused to say AA even though he knew what it was called and Watt asked him to stop), and then ask Watt if he could come to her "double A" meetings so that he could meet her hot friends.

43. Defendant Galli would routinely make statements concerning the male and female sexual anatomy to Watt.

44. Defendant Galli would routinely make sexually explicit jokes and comments to Watt.

45. Defendant Galli would bring up the topic of alcoholism while working on a grant or data in his office so as to ask Watt if he was an alcoholic and then became combative about

what alcoholism is and what alcoholism is not. Watt asked him to stop this behavior and to go to a meeting if he had questions, but he continued to harass Watt concerning her alcoholism and recovery.

46. Watt went to Doug McMahon on August 15, 2013, to enquire about leaving the program with a Master's Degree. She was too afraid at this time to report the abuse she had suffered at the hands of Defendant Galli the previous four years.

47. Defendant Watt went to Doug McMahon on August 22, 2013 and reported the abuse she had suffered the past four years. Watt was removed from her lab and no action was taken against Defendant Galli. Watt was told that if she wanted to stay, she would have to start over in a new lab, which would set her back several years in her doctoral work. To Watt's knowledge, no appropriate corrective action was taken other than to remove her, thus damaging her ability to complete a PhD.

48. On August 27, 2013, Watt informed Defendant Cone of the abuse she had suffered at the hands on Defendant Galli. Defendant Cone informed Watt that in his opinion it "was nothing but a personality conflict." Watt was then advised to take a vacation. Upon information and belief no action was taken against Defendant Galli.

49. On September 09, 2013, Watt informed Roger Colbran, a peer of Defendant Galli, and Watt's thesis committee chair, of the abuse Watt had suffered at the hands of Defendant Galli.

50. Upon information and belief, prior female graduate students have filed complaints against Defendant Galli to which Defendants took no action against Defendant Galli.

51. Upon information and belief, Roger Cone knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Roger Cone is Defendant Galli's superior.

52. Upon information and belief, Mark Wallace knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Mark Wallace is Defendant Galli's superior.

53. As a result of the sexual harassment, mental abuse and discrimination Watt sought psychological counseling at Athena consulting & Psychological Services from August 2013 until February 2014.

54. As a result of the sexual harassment, mental abuse and discrimination Watt sought psychological counseling at Vanderbilt Psychological and Counseling Center from September 2009 until 2013.

55. During this time, Watt was seeing the psychologist provided to the graduate students in the program. The psychologist diagnosed her with PTSD, depression and other disorders from the harassment she experienced in Defendant Galli's lab.

56. As a result of the sexual harassment, harassment, emotional abuse and discrimination, Watt eventually left the PhD program and as a result her career, earnings, future earnings have all greatly been impacted to her detriment.

## FEDERAL CAUSES OF ACTION

### COUNT I – VIOLATION OF TITLE VII

57. The facts, information, and assertions set forth above in Paragraphs 1-56 are incorporated by reference, as if fully repeated.

58. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex.[1]

---

[1] The United States Supreme Court has recognized that the sexual harassment of a subordinate by a supervisor in an employment situation constitutes unlawful discrimination under Title VII. See *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

59. Watt was an employee of Vanderbilt University and Vanderbilt University School of Medicine for which she received a Federal W-2 form and paid federal taxes.

60. According to the "economic realities test" Watt was an employee of Vanderbilt University as benefits were withheld from her paycheck.

61. Watt was subjected to unwelcome sexual harassment in the form of verbal or physical conduct of a sexual nature.

62. The harassment suffered by Watt was a result of her being a young attractive female. Additionally, Watt was targeted due to her perceived bisexuality and the fact she was in recovery for substance abuse and had been sober for many years.

63. Defendant Galli, daily acted in a manner towards Watt which constituted sexual harassment, harassment, discrimination and emotional abuse.

64. The conduct by Defendant Galli was so severe and pervasive to create an environment that a reasonable person would find hostile or abusive, and that Watt subjectively regarded the environment as abusive.

65. Vanderbilt University, Vanderbilt University School of Medicine, and Defendant Galli did create a hostile work environment which allowed Watt to be subjected to sexual harassment, harassment, emotional abuse and discrimination.[2]

66. Watt would state that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive work environment.[3]

---

[2] Federal regulations set forth at 29 C.F.R. 1604.11(a) provide the following guidelines defining hostile environment sexual harassment, as appears to be alleged in the present case, in an employment setting:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

67. Watt does hereby allege that Vanderbilt University and Vanderbilt University School of Medicine failed to act in the face of known sexual discrimination, sexual harassment, harassment, and emotional abuse.

68. Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge or direct involvement in the discriminatory conduct.

69. Watt provided adequate notice to Vanderbilt University and Vanderbilt University School of Medicine of the sexual harassment, harassment, emotional abuse and discrimination suffered by Watt as a result of Defendant Galli's actions.

70. Upon information and belief, Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge of the sexual harassment, harassment, emotional abuse and discrimination pursuant to other informal or formal complaints being filed against Defendant Galli by past students.

71. Vanderbilt University and Vanderbilt University School of Medicine have an established history of attempting to cover up and or ignore abuses on its campus suffered by its students.

72. As a result of Watt reporting the sexual harassment, harassment, emotional abuse and discrimination perpetrated against her by Defendant Galli, she was removed from her lab and her position within the PhD program setting her back in her studies. Such action constitutes blatant retaliation against Watt by Defendants.

73. Vanderbilt University and Vanderbilt University School of Medicine actions are the direct and proximate cause of injury to Watt, including emotional damages and monetary damages.

---

[3] The Sixth Circuit Court of Appeals has acknowledged that the elements required to state a hostile environment sexual harassment claim under Title VII apply equally under Title IX. See *Doe v. Claiborne County, Tenn.,* 103 F.3d 495 (6th Cir.1996).

74. Watt has received a right to sue under the EEOC on May 02, 2014. See Attached.

COUNT II – VIOLATION OF TITLE IX[4]

75. The facts, information, and assertions set forth above in Paragraphs 1-74 are incorporated by reference, as if fully repeated.

76. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.20 U.S.C. § 1681(a).

77. Watt is a woman and is therefore a member of a protected class.

78. Watt was subjected to unwelcome sexual harassment in the form of verbal or physical conduct of a sexual nature.

79. The harassment suffered by Watt was a result of her being a young attractive female.

80. Vanderbilt University and Vanderbilt University School of Medicine did create a hostile educational environment which allowed Watt to be subjected to sexual harassment, harassment, emotional abuse and discrimination.

81. Watt would state that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment.

---

[4] Under Title IX, a plaintiff may state a claim of discriminatory harassment based upon a hostile educational environment by alleging that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) some basis for institutional liability has been established. Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a).

82. Watt does hereby state that Vanderbilt University and Vanderbilt University School of Medicine failed to act in the face of known sexual discrimination and sexual harassment.

83. Watt would hereby allege that there is sufficient evidence "showing that the custom or policy, acquiescence in, conscious disregard of, or failure to investigate or discipline" on the part of Vanderbilt University and Vanderbilt University School of Medicine of the known discrimination and abuse perpetrated against Watt.

84. Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge or direct involvement in the discriminatory conduct.

85. Watt provided adequate notice to Vanderbilt University and Vanderbilt University School of Medicine of the sexual harassment, harassment, emotional abuse and discrimination suffered by Watt as a result of Defendant Galli's actions.

86. Upon information and belief, Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge of the sexual harassment, harassment, emotional abuse and discrimination pursuant to other informal or formal complaints being filed against Defendant Galli by past students.

87. Vanderbilt University and Vanderbilt University School of Medicine have an established history of attempting to cover up and or ignore abuses on its campus suffered by its students.

88. As a result of Watt reporting the sexual harassment, harassment, emotional abuse and discrimination perpetrated against her by Defendant Galli, she was removed from her lab and her position within the PhD program setting her back in her studies. Such action constitutes blatant retaliation against Watt by Defendants.

89. Vanderbilt University and Vanderbilt University School of Medicine actions are the direct and proximate cause of injury to Watt, including emotional damages and monetary damages.

## COUNT III – VIOLATION OF AMERICANS WITH DISABILITY ACT TITLE I AND TITLE III

90. The facts, information, and assertions set forth above in Paragraphs 1-89 are incorporated by reference, as if fully repeated.

91. Watt is a recovering alcoholic who has been sober for many years.

92. Alcoholism is a recognized medical disease which left untreated has a high mortality rate.

93. Defendant Galli would systematically harass and abuse Watt as a result of her condition and sobriety.

94. Defendant Galli's actions are the direct and proximate cause of injury to Watt, including emotional damages and monetary damages.

95. Watt has received a right to sue under the EEOC.

## STATE CAUSES OF ACTION

## COUNT IV – VIOLATION OF TENNESSEE HUMAN RIGHTS ACT

96. The facts, information, and assertions set forth above in Paragraphs 1-95 are incorporated by reference, as if fully repeated.

97. The stated purpose of the THRA is, in part, to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972." Tenn.Code Ann. § 4–21–101(a)(l) (2013).[5]

---

[5] The Tennessee Supreme Court held that discrimination and retaliation under the THRA and the federal civil rights statutes are to be analyzed under the same framework. *Campbell v. Fla. Steel Corp.,* 919 S.W.2d 26, 31

98. Watt is a woman and is therefore a member of a protected class.

99. Watt was subjected to unwelcome sexual harassment in the form of verbal or physical conduct of a sexual nature.

100. The harassment suffered by Watt was a result of her being a young attractive female.

101. Vanderbilt University and Vanderbilt University School of Medicine did create a hostile educational environment which allowed Watt to be subjected to sexual harassment, harassment, emotional abuse and discrimination.

102. Watt would state that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment.

103. Watt does hereby state that Vanderbilt University and Vanderbilt University School of Medicine failed to act in the face of known sexual discrimination and sexual harassment.

104. Watt would hereby allege that there is sufficient evidence "showing that the custom or policy, acquiescence in, conscious disregard of, or failure to investigate or discipline" on the part of Vanderbilt University and Vanderbilt University School of Medicine of the known discrimination and abuse perpetrated against Watt.

105. Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge or direct involvement in the discriminatory conduct.

106. Watt provided adequate notice to Vanderbilt University and Vanderbilt University School of Medicine of the sexual harassment, harassment, emotional abuse and discrimination suffered by Watt as a result of Defendant Galli's actions.

---

(Tenn.1996). Accordingly, the Court applies its analysis of Plaintiff's Title IX claims to his THRA claims as well. *See Webb v. Wilson Cnty. Bd. of Educ.,* No. 3:05CV0214, 2006 WL 626188, at *6 (M.D.Tenn. Mar.10, 2006)

107. Upon information and belief, Vanderbilt University and Vanderbilt University School of Medicine had sufficient knowledge of the sexual harassment, harassment, emotional abuse and discrimination pursuant to other informal or formal complaints being filed against Defendant Galli by past students.

108. Vanderbilt University and Vanderbilt University School of Medicine have an established history of attempting to cover up and or ignore abuses on its campus suffered by its students.

109. As a result of Watt reporting the sexual harassment, harassment, emotional abuse and discrimination perpetrated against her by Defendant Galli, she was removed from her lab and her position within the PhD program setting her back in her studies. Such action constitutes blatant retaliation against Watt by Defendants.

110. Vanderbilt University and Vanderbilt University School of Medicine actions are the direct and proximate cause of injury to Watt, including emotional damages and monetary damages.

COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111. The facts, information, and assertions set forth above in Paragraphs 1-110 are incorporated by reference , as if fully repeated.

112. Defendant Galli, Defendant Vanderbilt University and Defendant Vanderbilt University School of Medicine had a duty to Watt to refrain from the behavior perpetrated against her as stated in this Complaint and or to protect her from the behavior.[6]

---

[6] In Tennessee, such a claim requires that the plaintiff establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. See Camper v. Minor, 915 S.W.2d 437, 446 (Tenn.1996). In addition, the plaintiff must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. Id.; see also Ramsey v. Beavers, 931 S.W.2d 527, 531-532 (Tenn.1996).

113. A special relationship exists between the University and its students and employees.

114. Defendants breached this duty and allowed detrimental harm to Watt.

115. The emotional distress suffered by Watt was serious and severe.

116. The actions of Defendant Galli and Defendant Vanderbilt University are the direct and proximate cause of Watt's injuries.

COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117. The facts, information, and assertions set forth above in Paragraphs 1-116 are incorporated by reference, as if fully repeated.

118. The actions of Defendant Galli, including the discrimination, sexual harassment, harassment, abuse, emotional abuse, taunting, and sexual verbalization was done with the expressed intent to cause Watt emotional distress. [7]

119. Defendant Vanderbilt University and Vanderbilt University School of Medicine allowed Defendant Galli to interact with female students knowing of his history of discrimination, sexual harassment, harassment, abuse, emotional abuse, taunting, and sexual verbalization amounts to reckless disregard to the probability that Watt would suffer emotional distress at the hands of Defendant Galli.

120. The emotional distress suffered by Watt was serious and severe.

121. The actions of Defendant Galli and Defendant Vanderbilt University are the direct and proximate cause of Watt's injuries.

---

[7] To state a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn.1997).

## COUNT VII – NEGLIGENT HIRING AND SUPERVISION

122. The facts, information, and assertions set forth above in Paragraphs 1-121 are incorporated by reference, as if fully repeated.

123. Defendants had a duty to Watt to refrain from or to protect her from the behavior perpetrated against her as stated in this Complaint.[8]

124. Defendants breached this duty and allowed detrimental harm to Watt.

125. The emotional distress suffered by Watt was serious and severe.

126. The actions of Defendant Galli and Defendant Vanderbilt University are the direct and proximate cause of Watt's injuries.

127. Upon information and belief, Roger Cone knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Roger Cone is Defendant Galli's superior.

128. Upon information and belief, Mark Wallace knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Mark Wallace is Defendant Galli's superior.

129. Defendant Vanderbilt University knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Defendant Vanderbilt University knew of the specific sexual and mental harassment suffered by Watt.

130. Defendant Vanderbilt University School of Medicine knew that Defendant Galli had a history of sexual and mental/emotional abuse of his students. Defendant Vanderbilt

---

[8] The Tennessee Court of Appeals has previously discussed the cause of action for negligent hiring, supervision, and retention:

Tennessee courts recognize the negligence of an employer in the selection and retention of employees and independent contractors. A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job. *Doe v. Catholic Bishop for Diocese of Memphis,* 306 S.W.3d 712, 717 (Tenn.Ct.App.2008)

University School of Medicine knew of the specific sexual and mental harassment suffered by Watt.

Wherefore, Plaintiff Watt requests judgment against the Defendants for:

1. Compensatory and general damages in the amount of $10,000,000.00.

2. Punitive damages in the amount of $10,000,000.00.

3. That Plaintiff has such other and further relief as the Court deems appropriate in the circumstances.

4. That the costs of the action be taxed to the Defendants.

5. That Plaintiff hereby demands a jury to try all issues and causes herein

6. That this Complaint be received and filed, and that proper process issue and be served upon the Defendants, requiring each of them to answer in the time and manner prescribed by law.

Respectably submitted,

/s/Jonathan L. Miley
JONATHAN L. MILEY, #22528
Attorney for Plaintiff
2225 Grantland Avenue
Nashville, TN 37204
(615) 306-6067